No. 88-599

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

FIRST NATIONAL BANK OF ALBUQUERQUE,
a National banking corporation,

Plaintiff and Respondent,

-vs-

QUINTA LAND AND CATTLE COMPANY,
a New Mexico corporation; RICHARD
D. BOKUM, II, and MARGARET B. BOKUM,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard C. Conover, Bozeman, Montana

For Respondent:

William D. Lamdin, III; Crowley Law Firm, Billings,
Montana

Submitted on Briefs: June 16, 1989

Decided: August 3, 1989

Filed:

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is a foreclosure action brought by First National Bank in Albuquerque, New Mexico (Bank), against Quinta Land and Cattle Company a New Mexico Corporation (Quinta), Richard Bokum and his wife, Margaret Bokum. Bank sought foreclosure of a mortgage on certain real property located in Gallatin County, Montana. The mortgage secured certain notes (numbers 753, 109, and 5052 which are herein referred to as the 1982 notes) held by and made payable to Bank. Those notes were the subject of an underlying suit litigated in New Mexico and were found to be in default. A judgment was entered and upheld on appeal by the New Mexico Supreme court. Bank then sought foreclosure in Montana. The Montana District Court, Eighteenth Judicial District, granted Bank summary judgment on the foreclosure issue, dismissed the counterclaims raised by defendants, and awarded certain attorney fees and costs to Bank. Requested relief from summary judgment was denied September 6, 1988. Defendants appeal.

Thus, the issues on appeal are whether any genuine issue of material fact exists to preclude summary judgment for Bank regarding either the foreclosure or the counter-claims, and, whether it was error to award attorney fees.

We affirm.

Quinta is a New Mexico corporation of which Mr. Bokum is the president and sole shareholder. In 1971, Quinta bought a large ranch consisting of several sections of land on the Madison River in Gallatin County (the Montana property).

In 1972 and 1973, Mr. and Mrs. Bokum constructed a large residence on the Quinta Montana property. Mrs. Bokum, although not a part of Quinta, contributed many hundreds of

2

thousands of dollars of her own wealth to this endeavor. The final structure included 30,000 square feet of living space.

Prior to this time, Bank and Bokum had an established banking relationship under which Bokum borrowed considerable amounts of money from Bank over many years. In 1974, Quinta, as well as Bokum, began signing on Bokum's notes with Bank.

The mortgages and indebtedness at issue in this action are founded on a comprehensive settlement and refinancing agreement executed by Bank, Quinta, and both Bokums on February 6, 1981. This agreement is fully evidenced by an Agreement of Accord and Satisfaction and Release; a commitment letter; and a Novation Agreement (referred to collectively herein as the "1981 Release").

As part of the 1981 Release, Mr. Bokum and Quinta executed two promissory notes in the amounts of $830,000 and $394,360.70. Both notes were dated February 6, 1981, and were due and payable on February 6, 1982.

These two notes were secured by a mortgage on the Montana property which was recorded in the Gallatin County Clerk and Recorder's office. That mortgage was dated February 6, 1981, and was signed only by Quinta. As additional security for those two notes, Bokum pledged 317,000 shares of stock in Bokum Resources Corporation and all outstanding stock in Quinta. The mortgage on the Montana property and pledged stock for Quinta Corporation represented the collateral agreed upon in the 1981 Release.

The note for $394,360.70 was renewed on February 6, 1982. To evidence this renewal, Quinta and Bokum executed a new promissory noted for $394,360.70 bearing a 16 percent per annum interest rate, which was due on or before August 5, 1982. This note is referred to as #753.

Also on February 6, 1982, the $830,000 note was reduced and renewed. Quinta and Bokum executed a new promissory note

3

in the amount of $330,230 also to be repaid with interest at the rate of 16 percent per annum on or before August 5, 1982. This note is referred to as #109.

Lastly, Bank made a loan of $82,000 to Quinta and Bokum on June 9, 1982. Quinta and Bokum executed a promissory note, also dated June 9, 1982, evidencing this debt. The note was due on or before December 9, 1982, together with interest thereon calculated at Bank's prime rate. This note was also secured by the two mortgages on the Montana property as well as by a pledge of stock in Quinta. It is referred to as #5052. These three notes comprise the 1982 notes, none of which were signed by Mrs. Bokum.

Quinta and Bokum never paid on these notes. Bank initiated this suit in Albuquerque, New Mexico, against Mr. Bokum and Quinta in December 1983. The suit sought joint and several judgment against the defendants as co-makers on the 1982 notes, and foreclosure on the two mortgages executed by Quinta on the Montana property.

In July 1984, Bank started these foreclosure proceedings in Montana, naming both Bokums and Quinta as defendants. (Mrs. Bokum was added because she claimed an "interest" in the residence.) At that time, defendants moved to stay the Montana proceedings until completion of the New Mexico litigation. Defendants argued to the Montana court that the validity of the 1982 notes needed to be established before foreclosure of Bank's mortgages would be proper. The District Court granted a stay in November 1984, at which time it pledged itself to give full faith and credit to any New Mexico judgment.

The New Mexico litigation was complex and lengthy. However, on March 31, 1986, the New Mexico trial court entered its findings of fact and conclusions of law, finding in favor of Bank. The court then entered judgment against Mr.

Bokum on the defaulted notes and ordered Bank to proceed with its foreclosure on the collateral.

Bokum appealed to the New Mexico Supreme Court. While that appeal was pending, Bank moved the Montana court to lift the stay in this proceeding. That motion was granted in March of 1987. Bank's case was later upheld by the New Mexico Supreme Court.

Bank filed motions for summary judgment in Montana on the foreclosure issue and on the late counterclaims raised by Quinta and Mr. Bokum. The District Court, following written and oral argument, issued its consolidated order dated March 2, 1988, granting both motions for summary judgment and awarding attorney fees and costs. Quinta and Mrs. Bokum appeal. Mr. Bokum does not appeal the entry of foreclosure judgment against his interest.

## I. Foreclosure Action

Bank needs to prove the following elements to make out a prima facie case for foreclosure:

(1) The debt of defendants;

(2) Nonpayment of the debt; and

(3) Present ownership of the debt by the complaining party.

Murray v. Creese (1927), 86 Mont. 453, 260 P.2d 1051.

The record reveals that Bank made its prima facie case of foreclosure at the summary judgment hearing and that no material dispute in the facts could be discerned. At that point, the burden shifted to defendants to present some evidence of a genuine issue of material fact which would defeat summary judgment. Mayer Brothers v. Daniel Richard Jewelers, Inc. (1986), 223 Mont. 397, 726 P.2d 815.

Quinta wholly failed to do so. Rather, Quinta relied on the affirmative defenses raised in its pleadings. Under

5

Rule 56(e), M.R.Civ.P., a party opposing summary judgment has an affirmative duty to respond by affidavits or sworn testimony with specific facts that show the need for trial, and is not allowed to merely rest on its laurels as set forth in the pleadings.

Quinta asserts that the Montana District Court improperly relied on the judgment of the New Mexico court in determining its liability on the 1982 notes. That argument is without merit. The District Court ruled that "any attempt to question the debt between plaintiff [Bank] and [Mr.] Bokum/Quinta is barred by the doctrine of collateral estoppel." We agree.

Assuming that Quinta raised its usury defense and its accommodation defense timely in the Montana action, those matters were fully litigated in New Mexico and liability was established on the defaulted notes. Specifically noteworthy in the findings of the New Mexico court are the following:

> 19. The 1982 notes are valid, binding obligations on Bokum and Quinta. The 1982 Notes were executed and given for valid consideration.
>
> . . .
>
> 21. The 1982 notes are not usurious.
>
> 22. The 1982 notes are in default.
>
> . . .
>
> 27. The 1982 notes are secured by a mortgage on Quinta's Montana ranch, all of the outstanding stock of Quinta and 317,000 shares of BRC stock. [Bank] is entitled to foreclose on that security.

Quinta was not a party to the New Mexico proceeding. However, the defenses raised in Montana by Quinta were iden-

tical to those raised by Bokum in New Mexico. The New Mexico court also found:

> 23. Bokum did not prove any defenses to the 1982 notes. Under these facts, we affirm the district court finding that Quinta had the opportunity to litigate these matters during the first trial and they are now barred by collateral estoppel.

We stated in Thoring v. LaCounte (1987), 219 Mont. 462, 733 P.2d 340, that the law of the state where a judgment is rendered controls the interpretation of the effect of the foreign judgment in any subsequent actions between the parties or those with whom there is privity.

Collateral estoppel under New Mexico law requires the following four elements:

(1) The parties must be the same or in privity with the parties in the original action;

(2) The subject matter in the two actions must be different;

(3) The facts or issues were actually litigated; and

(4) The issues were necessarily determined.

Reeves v. Wimberly (N.M. 1988), 755 P.2d 75. Reeves interpreted these elements saying: "Collateral estoppel applies to identical issues in the suits where the same parties or parties in privity are involved in both actions even though the subject matter in the second action differs from the first." Reeves, 755 P.2d at 77.

Quinta disputes that it was in privity with its sole shareholder, Mr. Bokum, and argues that lack of privity should defeat application of the collateral estoppel doctrine. We conclude that argument is also without merit. The record fully supports the trial court's ruling that collateral estoppel applied to bar Quinta from denying liability on

7

the 1982 notes as was determined conclusively in the previous action.

At this juncture, we would also like to quote from Quinta's brief in support of its motion to stay the Montana proceeding:

> . . . the issues of the validity of the notes in the suit will be determined under New Mexico law and the Montana court should not have difficulty in applying the findings of the New Mexico court to the Montana litigation as to Quinta since Quinta allegedly signed the notes in suit and Quinta is a company wholly owned by Mr. Bokum.

Bank also argued that Quinta's assertion that it was not liable on the 1982 notes would likewise be barred by the 1981 Release, res judicata and judicial estoppel. Since we have decided this issue under a collateral estoppel analysis, it is unnecessary for us to discuss Bank's further contentions, although they are equally persuasive.

Summary judgment as to Quinta on the foreclosure issue is affirmed.

Next, Mrs. Bokum asserts that she has an "interest" in the residence on the Montana property which should be protected from foreclosure and thus summary judgment as to her foreclosure defense was improper. We disagree.

Quinta, as legal successor to Kyd Cattle Co., is the owner of the mortgaged Montana property. It is undisputed that Mrs. Bokum contributed generously to the residence constructed thereon; however, that building is now affixed to the mortgaged property and legally subject to foreclosure.

It was incumbent upon Mrs. Bokum to take further steps if she intended to sever her interest from Quinta and protect it separately. Specifically, she should have obtained a partial satisfaction of Bank's mortgage, and a deed from

8

Quinta to the residence and recorded these with the Gallatin County Clerk and Recorder's office. Absent those steps, Quinta is the owner of the property and house on which Bank has the recorded mortgage which is superior to all other claims of Mrs. Bokum.

Mrs. Bokum's claimed "interest" fails as a matter of law and summary judgment against her on the foreclosure issue is affirmed.

## II.  Counterclaims

After the stay was lifted on the Montana proceeding in March 1987, Bank filed an amended complaint against defendants. Defendants filed two amended answers and then asserted the following counterclaims:

1.  Breach of fiduciary duty to Mr. Bokum;

2.  Failure to release mortgages under § 71-1-212, MCA; and

3.  Bad faith failure to release mortgages.

The District Court granted summary judgment on these counterclaims. Quinta and Mr. Bokum appeal summary judgment as to Count II, regarding the violation of § 71-1-212, MCA. Additionally, Mrs. Bokum appeals the District Court's "disregard for her harassment claim." We affirm summary judgment on both issues.

Section 71-1-212, MCA, provides for damages when a mortgagee refuses or neglects to issue a certificate of release after the mortgagor's full performance of the conditions of the mortgage. Bokum and Quinta asserted that Bank wrongfully failed to release its 1976 and 1979 mortgages in the New Mexico action.

The District Court dismissed this claim, ruling that Bokum's claim was barred in Montana because he was obligated to assert it in the New Mexico action but did not. The

9

District Court likewise dismissed Quinta's claim (as standing in privity with Bokum) as barred by res judicata. We agree.

The res judicata elements are determined under New Mexico law for our purposes here. Thoring, supra. Under New Mexico law, the following are the requisite elements to apply res judicata:

    (1)   identity of parties or privies;

    (2)   same subject matter;

    (3)   identity of capacity of character of persons for or against whom the claim is made; and

    (4)   the same cause of action.

Myers v. Olson (N.M. 1984), 676 P.2d 822, 824.

New Mexico has adopted the "transactional" analysis found in the Restatement (Second) of Judgment (1980), § 24 and § 25. Under that approach, the cause of action is viewed in the context of the broader transaction, or series of transactions, from which it arose. This approach disregards the fact that a variety of legal theories may be available to the parties under the transaction. Myers holds that the cause of action is "essentially equated with the transaction from which it springs." 676 P.2d at 824.

As was discussed under the collateral estoppel issue, the record supports the lower court finding with regard to identity of parties (or privies) in both actions. Also, there can be no genuine dispute that the subject matter and the capacities are the same in both actions. Lastly, we conclude that the fourth element regarding cause of action is likewise met under the transactional analysis.

Bokum and Quinta both have failed to bring forth any evidence which would preclude the District Court from applying res judicata to their counterclaims, thus precluding summary judgment. The record is replete with credible evidence supporting the District Court's application of summary

10

judgment on these counterclaims and that judgment is hereby affirmed.

We note only in passing that both counterclaims are likewise barred as a matter of law as claims specifically intended to be waived when all parties signed the 1981 Release.

We now turn to Mrs. Bokum's claim of "harassment." Mrs. Bokum asserts that the Bank tried to recover on property which Bank knew was in her name only. The Montana District Court disregarded Mrs. Bokum's claim for damages against the Bank for harassment. We agree.

The record reveals that Mrs. Bokum did not plead this claim properly but rather raised the issue for the first time in defendant's brief filed in opposition to Bank's motion for summary judgment on the counterclaims. It was not a part of the pleadings and she did not seek leave of the District Court to amend her pleadings as she was required to do under Rule 13, M.R.Civ.P.

Thus, this "claim" was not properly before the District Court, and no error was committed by disregarding it. Bank has carried its burden in showing no genuine issues of material fact exist as to its claims. Defendants have failed to come forward with affidavits or other sworn testimony to show any genuine issues of material fact which would defeat summary judgment. Therefore, summary judgment was proper on the counterclaims and is affirmed.

### III.  Legal Fees

Following an evidentiary hearing as to the reasonableness of attorney fees, the District Court awarded Bank $50,000 in attorney fees. We conclude that this award was lawful and reasonable.

The 1982 notes and the two mortgages securing those notes all provided contractually for the recovery of attorney fees. Additionally, Montana statute provides for award of attorney fees in foreclosure actions. Section 71-1-233, MCA. Thus, the award of fees was lawful.

The court took in testimony as to the reasonableness of the $62,477 amount requested by Bank. At the close of the testimony, the court awarded $50,000. Both the Montana and the New Mexico courts noted the complexity and the involved nature of this litigation. Based on the record of considerable time and energy spent by Bank and the other evidence presented as to attorney fees, we conclude the amount awarded for legal fees was reasonable.

Here we note that Bank argued in its appellate brief, "clearly the record reflects that Mr. Bokum and Quinta fought [Bank] every step of the way, on issues that could no longer be controverted in good faith, in an effort to delay the inevitable foreclosure that is now nearly seven years overdue." We conclude that this is an accurate representation of the record.

Bank is also entitled to its attorney fees on appeal.

Defendants were unable to present any evidence to preclude summary judgment when the burden shifted to them and have been unable to raise any meritorious arguments on appeal.

This cause is remanded to the District Court for a determination and award of reasonable attorney fees to Bank as a result of this appeal.

Chief Justice

12

We concur:

_John Conway Harrison_

_John L. Sheehy_

_B.C. McDonough_

_William E. Hunt_

Justices