FILED

10/24/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0546

DA 16-0546

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 257

HSBC BANK USA, National Association,

      Plaintiff and Appellee,

  v.

RICHARD G. ANDERSON; and
LIMEGROVE OVERSEAS, LTD.,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-12-614D
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Elizabeth L. Griffing, Axilon Law Group, PLLC, Helena, Montana

            Frederick P. Landers, Axilon Law Group, PLLC, Bozeman, Montana

      For Appellee:

            Charles E. Hansberry, Jenny M. Jourdonnais, Hansberry & Jourdannais, PLLC, Missoula, Montana

                           Submitted on Briefs:  August 16, 2017

                                   Decided:  October 24, 2017

Filed:

                                 Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Richard G. Anderson (Anderson) and Limegrove Overseas, Ltd., (Limegrove) appeal from an Eleventh Judicial District Court, Flathead County, order granting HSBC Bank USA, N.A.'s (HSBC) two motions for summary judgment and motion to exclude Anderson's expert. We affirm.

¶2 Anderson presents the following issues for review:

1. *Did the District Court abuse its discretion in excluding Anderson's expert witness?*

2. *Did the District Court err when it concluded Montana law governs HSBC's underlying foreclosure and New York law governs any defenses and counterclaims?*

3. *Did the District Court err in granting HSBC summary judgment to foreclose?*

4. *Did the District Court err in granting HSBC summary judgment on Anderson's counterclaims?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Anderson, a Canadian citizen, is the Chairman and Chief Executive Officer of Wilton Resources, Inc., a publicly traded oil and gas exploration company, headquartered in Calgary. Limegrove is a corporation organized under the laws of the British Virgin Islands. Anderson informally runs the day-to-day operations of Limegrove and its sole shareholder is the Karesmay Trust, an irrevocable offshore trust organized under the laws of Jersey, Channel Islands. Anderson's two adult children are the only beneficiaries of the Karesmay Trust. Limegrove's only asset is a vacation property located at 3542 East Lakeshore Drive, Whitefish, Montana (the Limegrove Property). The Limegrove Property

2

consists of "nine (9) cultivated acres of land situated on Whitefish Lake and includes a 10,000-plus square foot vacation home, a four-bay garage, 538 feet of lakeshore, and a 2-boat docking system." Anderson may use the Limegrove Property under an oral lease agreement. The ownership arrangement was set up for tax and estate planning purposes at Anderson's attorneys' suggestion. Anderson is not a shareholder in Limegrove and does not own property in Montana. Anderson spends no more than 90 days per year at the Limegrove Property.

¶4      HSBC is a federally chartered bank with offices in various cities throughout the United States, primarily New York City. Anderson contacted HSBC in the spring of 2006 looking for financing to facilitate the $17.5 million[1] acquisition of the Limegrove Property. Anderson worked with Frank Drury, an HSBC domestic private banking "Relationship Manager" specializing in customers with high net-worth. After negotiating, HSBC and Anderson agreed to a two-year loan for $15.5 million with a $2 million down payment. The loan required Anderson pay down the balance by half during the first year so the outstanding principal would be no more than $8.75 million. Trust indentures on the Limegrove Property, the Roxbury Property,[2] and 750,000 shares in First Calgary Petroleum secured the loan as collateral.

---

[1] All references to dollar amounts are in USD unless otherwise indicated.
[2] The Roxbury Property was another piece of property located on Whitefish Lake with an ownership arrangement similar to the Limegrove Property, that is, it was owned by a foreign corporation with its sole shareholder an offshore trust and Anderson's children as the trust's beneficiaries. At the time it was pledged as collateral, its estimated value was $6.5 million.

¶5     In accordance with these terms, three loan documents were drafted and executed. The loan documents consisted of (1) a Promissory Note (Note); (2) a Term Loan Agreement (TLA); and (3) a Trust Indenture Security Agreement and Fixture Filing, and Assignment of Leases, Rents and Agreements (Trust Indenture). The TLA, executed on May 9, 2006, stated a maturity date of May 8, 2008.

¶6     The Note and TLA contained choice of law provisions indicating New York law governed the agreements. The Trust Indenture is the only loan document containing a provision indicating Montana law governed the agreement. HSBC and Limegrove are the parties to the Trust Indenture and Limegrove's director signed the agreement. Anderson was not a party to or signatory of the Trust Indenture. The Trust Indenture pledged the Limegrove Property as collateral for the obligations under the Note and TLA. The Trust Indenture provided for certain events of default including if Anderson failed to pay any obligation or if the closing price of a share of First Calgary Petroleum fell below $6 Canadian (CAD). An event of default entitled HSBC the right to take possession or foreclose on the Limegrove Property.

¶7     Two events of default occurred by August 16, 2007. Anderson failed to pay down the outstanding principal amount of the loan by half and the value of a First Calgary Petroleum share fell below $6 CAD. HSBC transferred Anderson's loan to its Special Credit Unit and assigned it to Salvatore Gullo (Gullo) to manage. Anderson and Gullo discussed entering a forbearance agreement to give Anderson additional time to perform the loan obligations. HSBC does not have formal policies concerning forbearance

4

agreements, although they are "common practice." On May 6, 2008, two days prior to the loan's maturity date, Anderson and Gullo executed a Forbearance Agreement, in which HSBC agreed to forbear exercising its rights due to existing defaults until February 9, 2009, and Anderson agreed to pay down the principal by $2,750,000 and pledge 400,000 additional shares of First Calgary Petroleum as collateral.

¶8 In the Forbearance Agreement, Anderson reaffirmed the obligations under the TLA, Note, and Trust Indenture. The Forbearance Agreement was subsequently amended seven times, each time allowing Anderson additional time, ranging from two to nine months, to perform his obligations. In between the second and third amendments, on September 15, 2009, Anderson signed a Replacement Promissory Note (Replacement Note) subject to the terms and conditions of the TLA. The Replacement Note contained a choice of law provision indicating New York law governed the agreement.

¶9 Most of the seven amendments to the Forbearance Agreement required Anderson to make a payment toward the outstanding principal in exchange for HSBC extending the maturity date of the loan. Two amendments required Anderson pay an extension fee, one for $100,000 and another for $5,000. Each of the seven amendments contained a choice of law provision indicating New York law governed the amendment. Before the seventh amendment, Anderson had paid down the principal to $9 million. The seventh and final extension required several payments be made by specific deadlines and matured completely on January 15, 2012.

¶10 During the seventh amendment's extension period, Anderson and Gullo discussed an eighth amendment. However, in an email Gullo sent to Anderson, Gullo indicated he did "not have credit approval to extend" Anderson's loan. Anderson failed to make one of the required payments and did not pay off the loan by its January 15, 2012, maturity date. Anderson acknowledged he had not fulfilled his obligations and that he withheld payment because he assumed he would get another extension.

¶11 On February 16, 2012, HSBC sent Anderson a formal default letter and demanded payment in full by February 29, 2012. Anderson did not pay. On June 8, 2012, HSBC initiated a judicial foreclosure action against Anderson and Limegrove in Montana's Eleventh Judicial District Court, Flathead County. Anderson and Limegrove asserted affirmative defenses of estoppel and waiver and counterclaimed breach of the implied covenant of good faith and fair dealing, breach of implied contract, and violation of the Montana Consumer Protection Act.

¶12 The District Court entered a scheduling order and set the close of discovery for November 24, 2015. At Anderson's request, the parties informally agreed to delay expert disclosures from the original deadline of November 13, 2015, by eleven days to coincide with the close of discovery on November 24, 2015. On that date, HSBC disclosed two expert witnesses, a banking expert and an appraiser. Anderson disclosed one, an appraiser. On January 19, 2016, pursuant to a stipulation between the parties, Limegrove dismissed its affirmative defenses and counterclaims, leaving only Anderson's. Prior to trial, HSBC

moved for summary judgment on the foreclosure, Anderson's affirmative defenses, and Anderson's counterclaims.

¶13 On March 11, 2016, after the discovery deadline, Anderson filed a supplemental expert disclosure disclosing an additional expert witness, a banking expert, James Shires (Shires). Anderson also filed Shires's declaration. Anderson did not ask for leave to file the supplemental expert disclosure or declaration. On March 21, 2016, HSBC filed a pretrial motion to exclude Shires's testimony at trial and strike his affidavit. HSBC relied on M. R. Civ. P. 37(c)(1) and argued Anderson's late disclosure of Shires's testimony merited its exclusion. Anderson responded and argued the late disclosure was "substantially justified due to HSBC's late disclosure of certain written policies."

¶14 On March 22, 2016, the District Court held a hearing on the pretrial motions. The District Court found that Anderson's "failure to timely disclose Shires[] as an expert witness was not substantially justified and was not harmless." Further, the District Court found Anderson "did not move for or suggest an alternative sanction." The District Court, relying on *Doherty v. Fannie Mae*, 2014 MT 56, ¶ 15, 374 Mont. 151, 319 P.3d 1279, concluded that absent substantial justification, harmlessness, or a motion for a lesser sanction, Shires's testimony must be excluded and his affidavit stricken.

¶15 The District Court granted HSBC's three pretrial motions in a 42-page order dated August 30, 2016. On October 12, 2016, the District Court entered its final judgment and decree of foreclosure. The District Court awarded judgment to HSBC against Anderson for "$6,434,971.86 in principal, $1,885,689.62 in interest (for a base total amount owing

7

of $8,320,661.48), together with additional interest accruing (at a rate of $1,340.62 per day) from January 4, 2016 until the present [October 12, 2016,] and HSBC's reasonable out-of-pocket expenses (including attorneys' fees) . . . ."

¶16 Anderson appeals.

## STANDARDS OF REVIEW

¶17 A district court's exclusion of expert witness testimony is reviewed for an abuse of discretion. *Sunburst School Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 68, 338 Mont. 259, 165 P.3d 1079. A court abuses its discretion if it acts "arbitrarily without conscientious judgment or exceed[s] the bounds of reason." *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561 (quoting *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, 30 P.3d 326). This Court reviews decisions on choice of law de novo. *Masters Group Intl., Inc. v. Comerica Bank*, 2015 MT 192, ¶ 33, 380 Mont. 1, 352 P.3d 1101 (citation omitted) (hereinafter, *Comerica*). A motion for summary judgment should be granted, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). "We review de novo a district court's ruling on summary judgment, applying the criteria of M. R. Civ. P. 56(c)(3)." *Mt. Water Co. v. Dept. of Revenue*, 2017 MT 117, ¶ 7, 387 Mont. 394, 394 P.3d 922 (citations omitted).

**DISCUSSION**

¶18    *1.  Did the District Court abuse its discretion in excluding Anderson's expert witness?*

¶19    The parties initially dispute the appropriate standard of review for this issue. Relying on *Lorang v. Fortis Insurance Company*, 2008 MT 252, ¶ 53, 345 Mont. 12, 192 P.3d 186, Anderson contends that this Court reviews decisions to exclude evidence de novo.  HSBC argues that the correct standard of review for M. R. Civ. P. 37(c) sanctions is for an abuse of discretion.  "A district court possesses broad discretion in ruling on the admissibility of expert testimony, and without a showing of abuse of discretion, the district court's ruling will not be disturbed on appeal."  *Sunburst*, ¶ 68 (citing *State v. Vernes*, 2006 MT 32, ¶ 14, 331 Mont. 129, 130 P.3d 169); *see also McCulley v. U.S. Bank*, 2015 MT 100, ¶ 22, 378 Mont. 462, 347 P.3d 247 ("We review a district court's discovery ruling for an abuse of discretion."); *Serrania v. LPH, Inc.*, 2015 MT 113, ¶ 12, 379 Mont. 17, 347 P.3d 1237 ("This Court reviews sanctions orders for abuse of discretion."); *Doherty*, ¶ 12 ("We review a district court's decision regarding the imposition of sanctions for alleged discovery abuse to determine whether the district court abused its discretion." (citation omitted)).  We review the imposition of sanctions pursuant to M. R. Civ. P. 37(c) for an abuse of discretion.

¶20    On appeal, Anderson argues disclosing Shires late was substantially justified by HSBC's late production of certain policies and entries in its online Credit and Accounts Receivable Management System (CARMS).  Anderson argues the District Court inappropriately relied on dicta from *Doherty* to conclude Shires's information must be

excluded and its exclusion of Shires was "extremely harsh." Instead of *Doherty*, Anderson argues this Court should apply the three-part test outlined in *Maloney v. Home & Investment Center, Inc.*, 2000 MT 34, ¶ 35, 298 Mont. 213, 994 P.2d 1124, used to determine the appropriateness of excluding witnesses. Relying on *Maloney*, Anderson argues this Court should reverse the District Court's decision to exclude Shires.

¶21 HSBC responds by arguing that its late production of credit policies and CARMS does not provide Anderson "substantial justification." HSBC points out that Anderson initially asked for HSBC's credit policies in January 2013, and HSBC objected to the disclosure on the basis that the request was "overly broad, vague and unlimited in scope or time" and sought "proprietary, trade secret and/or confidential business information." Anderson never responded to HSBC's argument that the credit policies were undiscoverable, but three years later, on January 18, 2016, requested the policies again. On appeal, HSBC argues that by then it decided to just provide the policies in order to avoid a discovery dispute. Further, HSBC argues that the late-disclosed policies do not provide any justification for Anderson's late expert disclosure because the policies were not identified, quoted, or analyzed in Shires's disclosure and only mentioned once in his declaration. HSBC argues the CARMS were produced multiple times and for the first time in March 2013, well before the close of discovery. At Anderson's request, they were reproduced after. HSBC distinguishes *Maloney* and asserts that its test is no longer applicable because M. R. Civ. P. 37 was amended in 2011 and is now self-executing,

10

meaning the sanction of exclusion is automatic. HSBC argues the District Court correctly excluded Shires's testimony.

¶22 During discovery, litigants can be required, by scheduling order, to disclose their expert witnesses, their opinions, and the basis for those opinions. M. R. Civ. P. 26(b)(4)(A)(i); *Sunburst*, ¶ 70.

> If a party fails to provide information requested in accordance with these rules or fails to disclose information regarding opinions of a witness as required by Rule 26(b)(4), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

M. R. Civ. P. 37(c)(1). On motion, the court may impose other appropriate sanctions in addition to exclusion or instead of exclusion. M. R. Civ. P. 37(c)(1)(C). "If the court does not find the failure substantially justified or harmless, and if there is no motion for alternative sanctions, the information must be excluded." *Doherty*, ¶ 15, (citing M. R. Civ. P. 37(c)(1); *accord* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F. Supp. 3d 1101, 1106 (9th Cir. 2001) (describing Fed. R. Civ. P. 37(c)(1) as self-executing and automatic); *Olson v. Mont. Rail Link, Inc.*, 227 F.R.D. 550, 552 (D. Mont. 2005) (noting exceptions to automatic sanctions under Fed. R. Civ. P. 37(c)(1) if failure is substantially justified or harmless)).

¶23 Here, Anderson does not argue that the late expert disclosure was harmless and did not move the District Court for an alternative sanction. Anderson contends the late disclosure was substantially justified by HSBC's late production. We disagree. HSBC produced CARMS and credit policies after the close of discovery; however, the CARMS

were also timely produced and HSBC timely objected to producing the credit policies. Further, Anderson does not explain why he could not disclose Shires until HSBC produced the CARMS and credit policies. He does not, for example, claim that Shires's examination of those documents was somehow critical and, without them, he would not have selected or required an expert. We conclude the District Court did not abuse its discretion in excluding Shires's information and testimony.

¶24 Anderson asserted affirmative defenses of estoppel and waiver and counterclaimed breach of the implied covenant of good faith and fair dealing, breach of implied contract, and violation of the Montana Consumer Protection Act. Anderson bore the burden of proving these affirmative defenses and counterclaims. The District Court found, "It is reasonable to think that Anderson should have anticipated, from the outset, that in a case such as this, the opinions of an expert on banking practices would be required." We agree with the District Court. Even excluding the evidence provided by HSBC in January 2016, Anderson should have known that he would need a banking expert and timely disclosed one. The District Court did not abuse its discretion in concluding that Anderson's late disclosure was not substantially justified. The District Court did not err in excluding Anderson's expert witness.

¶25 *2. Did the District Court err when it concluded Montana law governs HSBC's underlying foreclosure and New York law governs any defenses and counterclaims?*

¶26 The parties agree Montana law governs the foreclosure action. The parties disagree on which state's law governs Anderson's defenses and counterclaims. The District Court applied the *Comerica* choice of law test and concluded New York law governed

12

Anderson's affirmative defenses and counterclaims. *Comerica*, ¶ 55. On appeal, Anderson argues Montana law was the parties' choice in the Trust Indenture, which allowed HSBC to foreclose, and his defenses and counterclaims are "part and parcel" to the foreclosure action. Montana law should, Anderson argues, govern the entire dispute despite the choice of law provisions in the other loan documents. HSBC argues Anderson's defenses and counterclaims arise from the other loan documents, which Anderson is a party to and all contain New York choice of law provisions. Further, HSBC argues Anderson cannot rely on the Trust Indenture because he was not a party to or signatory of it. Additionally, HSBC indicates that Limegrove was a party to the Trust Indenture; however, in a document filed on January 19, 2016, Limegrove dismissed its affirmative defenses and counterclaims with prejudice.

¶27 Statute dictates choice of law as to real property. "Real property within this state is governed by the law of this state . . . ." Section 70-1-107, MCA. "A court may not act directly upon the title to real property in a foreign jurisdiction." *Aetna Life Ins. Co. v. McElvain*, 221 Mont. 138, 147, 717 P.2d 1081, 1086 (1986). Judicial foreclosures must occur in the jurisdiction where the property is located. Here, Montana law must govern the Trust Indenture in order to allow foreclosure of the Limegrove Property as a remedy.

¶28 "We recognize and enforce a clear and unambiguous contract term, unless that term 'violates public policy or is against good morals.'" *Comerica*, ¶ 54 (quoting *Youngblood v. Am. States Ins. Co.*, 262 Mont. 391, 395, 866 P.2d 203, 205 (1993)).

> In the construction of an instrument, the office of the judge is simply to
> ascertain and declare what is in terms or in substance contained therein, not

13

to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

Section 1-4-101, MCA.

¶29 In *Comerica*, we recognized the test Montana courts apply to choice of law disputes. We apply the law of the state chosen by the parties to govern their contractual rights unless the following three factors are met:

> (1) but for the choice of law provision, Montana law would apply under [*Restatement (Second) of the Conflict of Laws* § 188]; (2) Montana has a materially greater interest in the particular issue than the parties['] chosen state; and (3) application of the chosen state's law would contravene a Montana fundamental policy.

*Comerica*, ¶ 55 (quotation and citations omitted). All three factors must be met and if a clear choice of law provision does not violate Montana public policy, there is no reason to analyze factors (1) and (2). *Comerica*, ¶ 55 (citations omitted). If the parties' chosen state's law does not contravene Montana public policy, it will be applied.

¶30 To determine whether the terms in the loan documents are clear and unambiguous, we first examine the provisions. Ten contracts explicitly state New York law governs them. The TLA states:

> Section 8.5. <u>Governing Law.</u> This Agreement and the Loan Documents shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflicts of law principles thereof (other than Section 5-1401 of the New York General Obligations Law), and except as otherwise specifically set forth in the Mortgages with respect to each Mortgage and the Mortgaged Premises (in which event the laws of the jurisdiction in which the Mortgaged Premises is located shall apply).

14

(Emphasis in original.) The Note states "THIS PROMISSORY NOTE SHALL BE GOVERENED BY THE LAWS OF THE STATE OF NEW YORK." (Emphasis in original.) The Replacement Note states "THIS REPLACEMENT PROMISSORY NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK." (Emphasis in original.) Each of the seven amendments to the Forbearance Agreement include the same provision stating, "[t]his Amendment shall be governed by, and construed under, the internal laws of the State of New York, without regard to principles of conflicts of law." These contracts clearly and unambiguously indicate the parties agree to the application of New York law.

¶31 The Trust Indenture is the only document indicating Montana law governs it.

> Section 13.   Law Governing.     This Indenture of Trust shall be governed by and construed in accordance with the laws of the jurisdiction in which the Land is located.

(Emphasis in original.) It is undisputed the land at issue, the Limegrove property, is located in Montana. This provision is clear and unambiguous. The Forbearance Agreement does not contain a choice of law provision but does contain a provision reaffirming the obligations set forth in the TLA and other loan documents. If possible, our goal will be to give effect to each choice of law provision in each instrument. Section 1-4-101, MCA.

¶32 The District Court found it significant that Anderson was not a party to the Trust Indenture, the only contract selecting Montana law, and was a party to each of the loan documents selecting New York law:

> Although they relate to the foreclosure, none of Anderson's defenses or claims raise questions or issues that concern or directly affect interest in the

15

property. Rather Anderson's defenses and counterclaims are based on allegations concerning HSBC's conduct with respect to the underlying debt. Issues which do not affect interest in the land, although they relate to the foreclosure, are determined by the law which governs the debt for which the mortgage was given. *Restatement (Second) of Conflict of Laws* [§] 229 cmt. e. Anderson's affirmative defenses and counterclaims arise out of the contracts that establish the underlying debt—the Note, Replacement Note, TLA, Forbearance and forbearance amendments (extensions). Anderson is a party to all of these contracts and all of these contracts either contain or incorporate New York choice of law provisions.

¶33 Litigants lack standing to enforce obligations of a contract if they are not a party to, or third-party beneficiary of, that contract. *See Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 15, 366 Mont. 285, 291 P.3d 1082. Anderson is not a party to the Trust Indenture and cannot enforce its choice of law provision.[3] Anderson asserted affirmative defenses and counterclaims. However, Anderson's defenses and counterclaims cannot arise from the Trust Indenture he is not a party to.

¶34 Anderson is a sophisticated businessperson and CEO of a publicly traded corporation. He has experience orchestrating similar ownership arrangements for other vacation properties in order to accomplish his tax and estate planning goals. Multiple attorneys represented Anderson during the formation, review, and execution of the loan documents between Anderson, Limegrove, and HSBC. Based on Anderson's sophistication, experience, and access to legal representation, the District Court found "[i]t is reasonable to interpret Anderson's and HSBC's action of including a choice of (New

---

[3] Anderson does not argue he is a third-party beneficiary to the Trust Indenture. He does argue he owes obligations under the Trust Indenture and is named as "borrower," but fails to develop this argument.

16

York) law provision in the contracts as their intention that the provision apply to claims and affirmative defenses arising from those contracts." (Citation omitted.) We agree with the District Court. Anderson agreed, ten separate times, to the application of New York law, and was not a party to the only instrument indicating Montana law applied. He cannot now invoke a provision of a contract he was not a party to in order to avoid a choice of law selection he explicitly, and repeatedly, agreed to unless that provision contravenes Montana public policy.

¶35 We now consider whether New York law contravenes Montana public policy. *Comerica*, ¶ 55. The District Court found "Anderson has not identified any aspect of [] either his affirmative defenses or claims to which application of New York law would somehow contravene Montana's public policy." On appeal, Anderson does not suggest New York law contravenes Montana's public policy, he maintains only that the parties chose Montana law. We disagree that the parties chose Montana law. Instead, we believe the parties chose New York law, as evidenced by the ten separate and explicit provisions. New York law was generally the parties' choice, but they were required by statute to include a Montana choice of law provision in the Trust Indenture to facilitate foreclosure within the state.

¶36 The District Court found New York and Montana law comparable as it relates to Anderson's defenses and counterclaims. The District Court found "there is no substantive difference between Montana and New York law on the defenses of equitable estoppel" or waiver. In Montana, a prima facie claim of equitable estoppel is established by six

17

elements outlined in *Turner*, ¶ 30.  Likewise, in New York, courts recognize six similar elements to establish equitable estoppel (three elements concerning the party estopped and three concerning the party asserting the doctrine).  *Wallace v. BSD-M Realty, LLC*, 142 A.D.3d 701, 703 (N.Y. App. Div. 2016).  In both Montana and New York, waiver is a voluntary and intentional relinquishment of a known right.  *Comerica*, ¶ 81; *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 184 (N.Y. 1982).

¶37     As to Anderson's counterclaims, the District Court found, "[l]ike Montana, New York recognizes claims for breach of the implied covenant and breach of implied contract and also has its own consumer protection statute."  Citing *19 Recordings Ltd. v. Sony Music Enter.*, 97 F. Supp. 3d 433, 438 (S.D.N.Y. 2015) (implied covenant); *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. App. Div. 1999) (implied contract); *N.Y. Gen. Bus. Law* § 349 (footnote omitted).  The law governing Anderson's defenses and counterclaims are similar in Montana and New York and the District Court held "application of New York law to Anderson's affirmative defenses and claims would not contravene Montana public policy."

¶38     We agree with the District Court.  Based on the similarity between New York and Montana law relating to Anderson's defenses and counterclaims we conclude that applying New York law does not offend Montana public policy.  Further examination of the remaining two factors is not required.  *Comerica*, ¶ 55.  The District Court did not err in concluding Montana law governed HSBC's judicial foreclosure action and New York law governed Anderson's defenses and counterclaims.

18

¶39     *3. Did the District Court err in granting HSBC summary judgment to foreclose?*

¶40     "The party moving for summary judgment bears the initial burden of establishing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." *Semenza v. Kniss*, 2008 MT 238, ¶ 18, 344 Mont. 427, 189 P.3d 1188 (citation omitted). If met, "the burden shifts to the non-moving party" to avoid summary judgment by "establish[ing] with substantial evidence, as opposed to mere denial, speculation, or conclusory assertions, that a genuine issue of material fact does exist or that the moving party is not entitled to prevail under the applicable law." *Semenza*, ¶ 18 (quotation and citations omitted). The evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences are to be drawn in favor of the party opposing summary judgment. *Redies v. Attys. Liab. Protec. Socy.*, 2007 MT 9, ¶ 26, 335 Mont. 233, 150 P.3d 930 (quotation and citations omitted).

¶41     In Montana, "[t]o make a prima facie case for foreclosure, the bank is obligated to prove the following three elements: (1) the debt of defendants [Anderson and Limegrove]; (2) non-payment of the debt; and (3) ownership of the debt by the complaining party [HSBC]." *Farm Credit Bank v. Hill*, 266 Mont. 258, 264, 879 P.2d 1158, 1161 (1993) (citing *First Natl. Bank v. Quinta Land and Cattle Co.*, 238 Mont. 335, 339, 779 P.2d 48, 50 (1989). The District Court concluded HSBC, the moving party, proved all three elements. At the District Court, Anderson argued against summary judgment, claiming principles of equitable estoppel and waiver precluded HSBC's foreclosure. On appeal,

19

Anderson argues HSBC failed to prove the second element—non-payment of the debt—because HSBC waived its right to payment.[4]

¶42    Waiver is a relinquishment of a known right. *Nassau*, 56 N.Y.2d at 1269.  Anderson argues HSBC waived its right to payment by continuing to give him extensions.  Anderson argues he did not pay off the loan at the end of the seventh extension because he assumed he would get another extension.   However, evidence provided to the District Court indicated HSBC only waived its rights as to maturity of the debt for the defined period indicated in the Forbearance Agreement and its amendments and had not waived its right to full, eventual payment.  Each amendment to the Forbearance Agreement stated a specific maturity date, that it was the parties' "entire agreement," and that it could not be modified except by a signed, written agreement.  Anderson acknowledged he was never promised an eighth extension period.  Additionally, email correspondence between Anderson and Gullo indicated Gullo told Anderson he did not have credit approval to extend the loan again.

¶43    The District Court found, "Anderson has not submitted any evidence which raises a question of material fact as to the second element, non-payment of the debt.  In his deposition testimony, Anderson acknowledged that, although he was making payments on the interest, he had not paid off the principal."  The District Court also found, "Anderson

---

[4] Anderson also claims "HSBC was first to breach the TLA," but does not explain how this would excuse Anderson's payment.  It is not this Court's job to conduct legal research on Anderson's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to that position. *See Johansen v. Dept. of Nat. Resources & Conserv*, 1998 MT 51, ¶ 24, 288 Mont. 39, 955 P.2d 653 (citations omitted).  We do not consider this argument.

has not provided any evidence that raises a question of fact as to whether HSBC waived its rights for all time or for any period of time after the January 15, 2012 maturity date under the Seventh Forbearance Amendment." Viewing the evidence in Anderson's favor, we conclude no issue of material fact existed to dispute or excuse Anderson's non-payment of the debt. The District Court did not err in granting HSBC summary judgment to foreclose.

¶44 *4. Did the District Court err in granting HSBC summary judgment on Anderson's counterclaims?*

¶45 At the District Court, Anderson asserted three counterclaims. On appeal, Anderson argues the District Court erred in granting summary judgment to HSBC regarding only two: breach of the implied covenant of good faith and fair dealing and violation of the Montana Consumer Protection Act. Like at the District Court level, Anderson cites only to Montana authority to support his contentions on appeal because he disagrees that New York law governs his counterclaims. However, New York law governs Anderson's counterclaims.

¶46 Anderson argues HSBC breached the implied covenant of good faith and fair dealing by acting dishonestly in negotiating and granting him extensions. On appeal, Anderson does not cite to any specific dishonest action, instead arguing generally that he had "presented more than sufficient evidence to show that Gullo's actions displayed actual dishonesty and HSBC's actions were outside of accepted commercial practices." The District Court granted HSBC summary judgment because Anderson failed to present admissible evidence to raise an issue of fact regarding his breach of implied covenant claim.

¶47     Evidence considered for summary judgment purposes must be admissible. *Hiebert v. Cascade Co.*, 2002 MT 233, ¶ 29, 311 Mont. 471, 56 P.3d 848. A party opposing summary judgment cannot create an issue of material fact by contradicting prior sworn statements. *Kaseta v. N.W. Agency*, 252 Mont. 135, 138, 827 P.2d 804, 806 (1992) (citation omitted). Referring to its exclusion of Shires's testimony, the District Court cited M. R. Civ. P. 56(e)(2) and held "Anderson cannot rely on inadmissible evidence to raise a question of fact in opposition to a motion for summary judgment." Additionally, the District Court refused to consider a sworn statement of Anderson because it directly contradicted an earlier sworn statement.

¶48     The covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *19 Recordings Ltd.*, 97 F. Supp. 3d at 438 (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995)). "The implied covenant cannot be used to create independent obligations beyond the contract." *19 Recordings Ltd.*, 97 F. Supp. 3d at 438 (quotation omitted). Anderson does not argue HSBC destroyed or injured his right to receive the fruits of any of the contracts he entered into. Anderson's argument that HSBC breached the implied covenant by failing to grant an eighth extension must fail because the implied covenant does not create obligations beyond the contract. *See 19 Recordings Ltd.*, 97 F. Supp. 3d at 438. HSBC was not obligated by the implied covenant of good faith and fair dealing to amend the forbearance

22

agreement an eighth time. Therefore, HSBC did not breach the implied covenant of good faith and fair dealing.

¶49 Anderson also counterclaimed HSBC violated the Montana Consumer Protection Act, a Montana specific statute. On appeal, Anderson cites § 30-14-103, MCA, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." As set forth above, New York law, not Montana law, governs Anderson's counterclaims. The District Court noted New York law also prohibits "deceptive acts or practices" under *N.Y. Gen. Bus. Law* § 349(a). However, Anderson did not allege a violation of New York law. Anderson does not allege HSBC violated an applicable law. The District Court did not err in granting HSBC summary judgment on Anderson's counterclaims.

## CONCLUSION

¶50 The District Court did not abuse its discretion in excluding Shires's expert testimony pursuant to M. R. Civ. P. 37(c). The District Court did not err in its conclusion on choice of law. The District Court did not err in granting HSBC summary judgment to foreclose and did not err in granting HSBC summary judgment on Anderson's counterclaims.

¶51 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE