No. 86-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

THOMAS L. TOPE and ANNA TOPE,

        Plaintiffs and Appellants,

   -vs-

LILLIAN RUTH TAYLOR,

        Defendant and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Chouteau,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Emmons & Coder; Robert L. Emmons, Great Falls,
Montana

    For Respondent:

        Hoyt & Blewett; Alexander Blewett, III, Great Falls,
Montana

Submitted on Briefs: August 21, 1986

Decided:  November 20, 1986

Filed:  NOV 20 1986

_Ethel M. Harrison_

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

On March 25, 1986, final judgment was entered in the District Court of the Twelfth Judicial District, County of Choteau, granting defendant, Lillian Ruth Taylor's motion for summary judgment. Thomas L. Tope and Anna Tope appeal. We reverse the judgment and remand this cause because material issues of fact exist.

On May 24, 1974, Leslie Taylor drew his last will and testament in the law offices of Hauge, Hauge, Ober and Spangelo in Havre, Montana. Lester Hauge, attorney, retained a copy. By his will, Leslie Taylor gave 240 acres to Rodney Fraser, $10,000 to his sister, Lillian Taylor, and the remainder of his estate, later valued at $506,000, to Tom and Anna Tope, in equal shares. Tom Tope and Anna Tope were named as executor and alternative executrix, respectively. It is undisputed that Lillian, Anna and Tom were each aware of the will. This dispute arises because the original will was not produced after Leslie died.

Two or three weeks after Leslie's death, Lillian, Anna and Tom met at Lillian's home to discuss the handling of Leslie's affairs. The depositions of the parties presented the trial judge with a wide array of facts respecting that meeting. For purposes of a summary judgment motion, we view the facts in the light most favorable to the party opposing the motion. Further, the party opposing the motion is "afforded the benefit of all reasonable inferences which may be drawn from the offered proof." Reaves v. Reinbold (Mont. 1980), 615 P.2d 896, 898, 37 St.Rep. 1500, 1502.

The trial judge ostensibly followed this rule of law by adopting Anna's version of the facts. However, we find significant discrepancies between Anna's "facts" and the

2

"facts" as presented by Tom Tope. Tom's facts and the reasonable inferences therefrom are at times more beneficial to plaintiffs' position than are Anna's. We therefore adopt the proof most beneficial to plaintiffs, regardless its source.

In his deposition, Tom stated that Leslie Taylor brought his will to Tom's house and showed it to Tom the same day it was executed. Although various conversations were subsequently had between Tom and Leslie with respect to treatment of ranch assets upon Leslie's death, the two had no other conversations specifically about the will. Leslie never indicated to Tom that he had changed his original will. Tom, as well as Anna, believed that had Leslie changed his will, Leslie would have so informed them.

At the time of Leslie's death, Tom did not think the will itself had been changed. As confirmation of Tom's beliefs, Lester Hauge informed Tom upon Leslie Taylor's death that Tom was heir to practically everything and executor of Leslie's estate. The attorney's copy of Leslie's will dated May 24, 1974, was in existence at the time of Leslie's death and had not been altered.

Regarding Tom's and Anna's conversation with Lillian two to three weeks following Leslie's death, Tom stated Lillian told him "there had been some changes," but did not specify "changes in what." Tom assumed the changes were due to the recent sale of grazing land, but he did not know precisely to what she was referring.

Tom assumed Lillian possessed Leslie's will because she had his other personal items. Lillian never specifically told Tom or Anna that she had the will. Anna stated that Lillian offered to let Tom and her read the will, but that they declined. Tom did not recall that conversation.

3

Lillian later claimed Leslie burned his will immediately prior to entering the hospital for the last time. There was no corroboration for Lillian's testimony that her brother either changed or burned the will.

Finally, both Tom and Anna agree that at the meeting shortly after Leslie's death, Lillian promised that she would do the best she could to carry out Leslie's wishes. Tom assumed that Leslie's will and Leslie's wishes were one and the same. By inference then, Tom assumed that he would receive the majority of Leslie's estate whether or not the will was produced.

The will was never produced. Lillian petitioned for letters of administration of intestacy and requested distribution of the estate to herself as sole lawful heir. She was appointed personal representative of the estate. Under the decree of final distribution entered in March of 1976, Lillian received the entire estate, with appraised assets of over $500,000.

Between 1976 and 1982, Lillian paid or gave to the Topes assets from the estate and cash totalling over $250,000. Two of those presentments required the signing of promissory notes by the Topes in favor of Lillian, the validity of which is now questioned.

In October of 1982, when the recently divorced Topes were facing financial disaster, Lillian told Anna that she was going to "start from the ground up" with respect to distribution of the estate to them. Upon learning of Lillian's statement, Tom decided to probate Leslie's will in an effort to obtain what Tom believed was rightfully his. This Court, in In the Matter of the Estate of Taylor (Mont. 1984), 675 P.2d 944, 41 St.Rep. 34, held that Tom's petition to probate the will was barred by the applicable three-year

4

statute of limitations. See § 72-3-122, MCA. However, we further stated that Tom could proceed through "any other remedy available to him." Estate of Taylor, 675 P.2d at 947, 41 St.Rep. at 38.

Tom filed his original complaint in this action on March 24, 1984. An amended complaint was served in July of 1984, with Anna joined as a plaintiff. The Topes plead several theories of recovery, including fraud, constructive fraud, laches and estoppel. They seek to recover Leslie's entire estate, punitive damages from Lillian, cancellation of the promissory notes they had executed in favor of Lillian and attorney's fees. Upon consideration of all the evidence before him, including the depositions of Anna, Tom and Lillian, the trial judge determined no genuine issue of material fact existed and granted summary judgment to Lillian Taylor on each of the theories raised by the Topes.

On appeal, the Topes raise numerous issues. Because reversal of the summary judgment requires reversal of the trial judge on only one of the theories presented by the Topes, we find two issues to be dispositive.

1. Does a genuine issue of material fact exist?

2. Has a case for promissory estoppel been made?

I.

Two genuine issues of material fact were decided by the trial judge. First, the judge found that Leslie Taylor made long-hand changes in his will of May 24, 1974. The only evidence in support of this determination is Lillian's statement that the will had been changed. In response, Tom and Anna both stated they believed that if Leslie had changed his will, they would have been told. The Topes both denied being told of any changes.

5

Lillian, as the party moving for summary judgment, has the burden of proving the absence of an issue of fact as to whether changes were made in the will. Bonawitz v. Bourke (1977), 173 Mont. 179, 182, 576 P.2d 32, 34. The standard required of the movant is strict:

> To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.

Kober v. Stewart (1966), 148 Mont. 117, 122, 417 P.2d 476, 478, citing 6 Moores Federal Practice 2d, § 56.15[3], at 2335 (2d ed. 1986).

In Reaves, supra, defendant submitted an affidavit, a letter written by plaintiff and an admission by plaintiff concerning facts which would support a finding that an oral contract existed. Plaintiff countered with a denial that a contract ever existed. We held that defendant had not met his burden of proof. Likewise, the self-serving statement of Lillian with respect to the changes in the will is insufficient to meet the burden of proof imposed upon her. Nor does it clearly indicate the truth.

That a fact-finder should be provided the opportunity to determine whether Leslie Taylor altered his will becomes even more apparent in light of Lillian's statements that Leslie burned his will prior to entering the hospital for the last time. The trial judge assumed the will to be in existence at the time of Leslie's death. If a fact-finder were to determine the will was not destroyed, aspersions would be cast upon Lillian's credibility, thus undermining her claim that the will had been altered.

The second genuine issue of material fact is what agreement, if any, was reached by the parties at the meeting at Lillian's house shortly after Leslie's death. The parties

6

all agree that Lillian stated she would abide by Leslie's wishes to the best of her ability. But, what did the parties understand Leslie's wishes to be?

There is of course an argument that Lillian's statement is "void for vagueness." The test is:

> It is an elementary rule of law that, to constitute an enforceable contract, the agreement of the parties to it must be sufficiently certain and explicit that their full intention may be ascertained to a reasonable degree of certainty. (Citaion omitted.)
>
> "If an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void; for neither the court nor the jury can make an agreement for the parties." Price v. Stipek, 39 Mont. 426, 104 Pac. 195.

Schwab v. McVey (1918), 54 Mont. 422, 425, 171 Pac. 277, 278. However, if it is found that the will was not changed or destroyed, the exact terms of the promise from Lillian to Topes is capable of being ascertained because all parties may have understood the testator's wishes to be those expressed in the will.

II.

Pursuant to § 72-3-301(1)(c), MCA, Tom could have, within three years, submitted the lawyer's copy of Leslie's will for probate.

> . . . A petition for formal probate of a will:
>
> (c) states whether the original of the last will of the decedent is in the possession of the court or accompanies the petition. If the original will is neither in the possession of the court nor accompanies the petition and no authenticated copy of a will probated in another jurisdiction accompanies the petition, the petition also must state the contents of the will and indicate that it is lost, destroyed, or otherwise unavailable.

On the basis of Lillian's promise to abide by Leslie's wishes if Tom did not probate the will, Tom did not offer the will for probate. The will, if not changed, named Tom as

7

the primary beneficiary. Tom therefore gave up substantial potential rights on the basis of Lillian's promise. The doctrine of promissory estoppel is thus invoked.

This Court has defined the elements of promissory estoppel as:

> (1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the reliance; (4) the party asserting the reliance must be injured by the reliance. (Citations ommitted.)

Keil v. Glacier Park, Inc. (1980), 188 Mont. 455, 462, 614 P.2d 502, 506.

Lillian's promise to Topes might be construed to be that Lillian would follow Leslie's wishes as expressed in his will, giving the bulk of the estate to Topes. It might be proven that the Topes relied on this promise because they in fact did not attempt to timely probate the will. Such reliance was arguably not only reasonable and foreseeable to Lillian, but expected. Since the Topes have not received the estate given them in the will, they would be injured by their supposed reliance.

Furthermore, the promissory estoppel claim may not be barred by laches. Tom testified he did not become aware of his possible injury until October of 1982, when he was told Lillian was going to "start from the ground up" with respect to his disbursements from the estate. His complaint was filed 17 months later. Under these facts, the doctrine of laches could not be invoked. Brabender v. Kit Mfg. Co. (1977), 174 Mont. 63, 568 P.2d 547. The Topes are entitled to go forward with their case.

We do not foreclose other theories of recovery for Topes. That will depend upon the record developed at trial. We only hold that under the facts already developed, a case

8

premised upon promissory estoppel requires reversal of summary judgment.

Lillian was also granted summary judgment with respect to Anna's and Tom's requests that the promissory notes not be repaid and that attorney's fees be awarded the Topes. The evidence is in conflict as to whether the Topes were to repay the notes. Attorney's fees are properly left to the discretion of the trial judge. We therefore vacate the summary judgment in its entirety and remand for further proceedings in conformance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9