FILED

October 20 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0101

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2010 MT 216

CHARLES LOKEY, and VANESSA LOKEY,

> Plaintiffs and Appellants,

v.

ANDREW J. BREUNER, and A.M. WELLES, INC.,

> Defendants and Appellees.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-08-57B
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Martin R. Studer; Studer Law Offices, Bozeman, Montana

For Appellees:

Allan H. Baris; Moore, O'Connell & Refling, P.C., Bozeman, Montana
Guy W. Rogers; Brown Law Firm, Billings, Montana

Submitted on Briefs:   September 22, 2010

Decided:   October 20, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1　Charles Lokey and Vanessa Lokey appeal the District Court's order dismissing the complaint as to A.M. Welles. The District Court certified that the order was final for purposes of appeal under M. R. Civ. P. 54(b). We reverse and remand.

¶2　Lokeys present the following issues for review:

¶3　Issue One: Whether the District Court erred in dismissing the complaint as to A.M. Welles.

¶4　Issue Two: Whether the District Court's assertion that Charles Lokey violated § 61-8-324, MCA, was improper.

## BACKGROUND

¶5　This action arises out of a September, 2006 collision between a bicycle ridden by Charles Lokey and a vehicle driven by Andrew Breuner. Lokey was riding his bicycle in heavy traffic on South 19th Avenue in Bozeman. An A.M. Welles dump truck loaded with gravel and pulling a trailer overtook Lokey and was slowly pulling around him. The Welles truck proceeded parallel to Lokey while Lokey moved over to the edge of the roadway to accommodate the truck.

¶6　Andrew Breuner was traveling in the opposite direction and had stopped to make a left turn into a driveway. The driver of the Welles truck saw Breuner stopped and saw that there was a long line of vehicles backed up behind him. He also saw that some other drivers were passing Breuner on the right. The driver of the Welles truck stopped in the road and gestured for Breuner to make the left turn. Breuner began the turn and collided

2

with Lokey and his bicycle. The Welles driver "forgot" that he was passing Lokey, who continued moving after the truck stopped, colliding with Breuner's vehicle. Lokey was injured in the accident, and his wife Vanessa Lokey claims loss of consortium and emotional distress.

¶7 Welles filed a motion to dismiss the complaint for failure to state a claim. The District Court granted the motion, concluding that the Welles driver was "no more responsible for Lokey than he was for any of the hundreds of other drivers on the road." The District Court further concluded that there is "no authority for Lokey's proposition that a driver who courteously yields his right-of-way to a left-turning driver is responsible for determining if all other lanes of traffic are clear of pedestrians or bicycles or whatever may be there."

## STANDARD OF REVIEW

¶8 A district court's decision on a motion to dismiss is treated as a conclusion of law that this Court reviews to determine whether it is correct. *Public Lands Access Assoc. v. Jones*, 2008 MT 12, ¶ 9, 341 Mont. 111, 176 P.3d 1005.

## DISCUSSION

¶9 *Issue One: Whether the District Court erred in dismissing the complaint as to A.M. Welles.* The briefs on appeal cast this issue as one of first impression in Montana: whether a person who undertakes to direct traffic, such as by gesturing for an on-coming driver to turn in front of him, has a duty to exercise reasonable care in doing so. Even if the facts are novel, resolution of the issue is based upon settled law.

3

¶10    This Court has recognized and adopted the "long-standing principle of tort law that 'one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.'" *Nelson v. Driscoll*, 1999 MT 193, ¶ 37, 295 Mont. 363, 983 P.2d 972 (citing the *Restatement (Second) of Torts*, § 323, *see also* § 324). In *Nelson* a police officer prevented a possibly impaired person from driving, and that person was later struck and killed by another driver while trying to walk home. This Court held that even though the officer may not initially have had a duty to protect the impaired person from harm, the officer assumed a duty to ensure the person's safety by controlling the situation and preventing the person from driving. *Nelson*, ¶ 38. Other cases support the established rule of law that one who acts gratuitously must then act with due care. *Jackson v. State*, 1998 MT 46, ¶ 49, 287 Mont. 473, 956 P.2d 35 (adoption agency that volunteers information about the background of the child has a duty to exercise due care in doing so); *Kopischke v. First Continental Corp.*, 187 Mont. 471, 481-82, 610 P.2d 668, 673-74 (1980) (car dealer who undertakes to repair and recondition a used car for resale assumes a duty to exercise reasonable care).

¶11    Other jurisdictions have adopted this rule as to "waving drivers" who gesture for another driver to turn in front of them:

> It is relatively easy for waving drivers to check if passage is safe, and if unable to do so, a driver contemplating a gesture should not take on the responsibility of directing traffic. Because gestures are so common and the risk of injury from car accidents so severe, it is only fair to impose a duty upon waving drivers.

*Thorne v. Miller*, 317 N.J. Super. 554, 560, 722 A.2d 626, 629 (1998). Prosser, in discussing the principle that a duty to act reasonably may arise from a gratuitous act,

4

gives as an example a driver who gestures for a following driver to pass and who "will be liable if he fails to exercise proper care and injury results." Prosser, *Law of Torts* (4th ed.), § 56.

¶12 The existence of a duty in a particular situation depends upon whether injury to another was reasonably foreseeable and upon a weighing of policy considerations for and against imposition of liability. *Hinkle v. Shepherd School District*, 2004 MT 175, ¶ 25, 322 Mont. 80, 93 P.3d 1239. Foreseeability depends upon whether the injured party was within the scope of risk created by the alleged negligence; whether the defendant could have foreseen that the conduct could have resulted in injury to the plaintiff. *Hinkle*, ¶ 30. Policy considerations include prevention of future harm, the burden placed upon the defendant, the consequences to the public of imposing a duty and the availability of insurance for the risk involved. *Hinkle*, ¶ 25.

¶13 Here, it was foreseeable that the Welles driver's conduct could endanger persons behind the gravel truck, including Lokey. Lokey had moved his bicycle to the fog line on the road and the Welles driver chose to go around him or start to do so. The Welles driver then decided to take it upon himself to address the traffic issue caused by Breuner's desire to turn left. The Welles driver saw the backed-up vehicles and the decision of some other drivers to pass Breuner on the right rather than to wait for Breuner to make his turn. The Welles driver knew that Lokey was present on the edge of the roadway and, according to Lokey, the Welles driver had been driving the truck alongside Lokey for some time. The Welles driver just "forgot" about Lokey when he gestured for Breuner to make the turn. The Welles driver could also have considered whether

5

Breuner's view was impeded by the size of the truck. It was foreseeable under these circumstances that Lokey, or even a driver following the Welles truck who might have decided to pass the stopped truck on the right (like the Welles driver observed in the opposite lane) might come around the Welles truck and be struck by Breuner. As the New Jersey court said in *Throne*, the responsible decision in such a situation may be to not take on the responsibility for directing traffic.

¶14 Placing a duty on the waving driver to either exercise due care before directing another driver or decide that it is not safe to do so, could prevent future harm in similar circumstances. There is little burden placed upon the waving driver—he could decide under the circumstances to not stop in the road and motion another to turn and could refrain from gesturing another driver to turn if the safety of the turn were questionable. The consequences to the public of imposing a duty are minimally burdensome and there is a potential increase in safety. Lokey asserts that Welles had insurance to cover the occurrence.

¶15 This case is not, however, about discouraging or condemning courtesy among drivers. To the contrary, driving, especially on crowded roads, can be a high risk endeavor that depends upon responsibility, interdependence and cooperation among all drivers. The blame is not upon courteous behavior, but upon directing the movement of other drivers without first exercising due care.

¶16 The Welles driver acted gratuitously by stopping on the road in the lane of travel and directing Breuner to turn left in front of him. By doing so, the Welles driver assumed

6

the duty of acting with reasonable care. The District Court's decision to the contrary was error.

¶17 It is for the jury to decide whether the Welles driver breached the duty and if so whether that was a cause of injury to Lokey.

¶18 *Issue Two: Whether the District Court's assertion that Charles Lokey violated §* *61-8-324, MCA, was improper*. Lokeys contend that the District Court's statement in the order that Charles Lokey met "none of the conditions" that would have allowed him to pass the Welles truck on the right under § 61-8-324, MCA, invades the province of the jury and is clearly erroneous. They request that we "set aside the District Court's assertion." On appeal Welles states that Lokey's compliance with that statute is "immaterial to the outcome of this appeal" and that the District Court's statement was arguably dicta.

¶19 As Lokeys point out, even though the District Court's order below granted Welles' motion to dismiss, the parties offered and the District Court considered materials in addition to the allegations of the complaint. Among those materials was the deposition of Charles Lokey, in which he describes riding his bike along the road that day. According to Lokey's testimony, it was not he who passed the truck on the right, but the truck who was attempting to pass him on the left and which drove alongside him for "an uncomfortable amount of time." According to Lokey, the Welles truck started to pull around him slowly and never completed passing him at the time of the accident. It is far from clear that there is any reason to apply the passing-on-the-right statute to Lokey under those circumstances.

7

¶20    Since this case is being reversed and remanded for further proceedings, the parties will be able to present their evidence to the jury, and the significance and legal effect of the conduct of each of the participants in the accident can be determined at trial.

¶21    Reversed and remanded for further proceedings consistent with this opinion.


                                        /S/ MIKE McGRATH


We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS