FILED

03/31/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0076

DA 25-0076

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 63

AMBER ROSE D'HOOGE,

      Plaintiff and Appellant,

  v.

CINCINNATI INSURANCE COMPANY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-23-870
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Lincoln Palmer, Rex Palmer, Attorneys Inc., P.C., Missoula, Montana

      For Appellee:

      Calvin J. Stacey, Morgan M. Sorena, Stacey & Funyak, Billings, Montana

Submitted on Briefs:  December 3, 2025

Decided:  March 31, 2026

Filed:

                    _____
                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Amber Rose D'Hooge appeals the Fourth Judicial District Court's Order denying her motion for partial summary judgment on breach of promissory estoppel and breach of contract and the Order granting Cincinnati Insurance Company's (Cincinnati) motion for summary judgment on all her claims. We restate and address the following issues:

> *Issue 1: Whether a third-party claimant can assert causes of action against an insurer other than statutory or common law bad faith under the version of § 33-18-242, MCA, that was effective prior to the 2023 amendments.*
>
> *Issue 2: Whether the District Court erred by concluding that D'Hooge could not prove the elements of promissory estoppel, breach of contract, spoliation, and equitable estoppel.*
>
> *Issue 3: Whether the District Court erred by concluding that D'Hooge failed to raise claims for unjust enrichment, negligent and intentional interference with economic advantage, and constructive fraud.*

¶2     We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On December 7, 2020, D'Hooge went to The Tire Guys Inc. (Tire Rama) automobile repair shop to have a tire repaired. D'Hooge slipped and fell while walking across Tire Rama's parking lot, suffering a broken leg. D'Hooge subsequently filed an insurance claim with Tire Rama's insurance provider, Cincinnati.

¶4     On December 22, 2020, D'Hooge spoke with Cheryl Lee, a Cincinnati claims specialist, regarding the incident. D'Hooge informed Lee that the attorney she hired for an unrelated matter advised her that Montana law required Cincinnati to pay her lost wages

2

and medical bills.[1]  Lee responded by asking D'Hooge to provide documents relating to the incident, medical bills, and lost wages.  D'Hooge forwarded the requested documents to Lee and asked Lee to let her know if Cincinnati needed any additional information to document Tire Rama's liability.  On December 28, 2020, Lee replied and instructed D'Hooge that she did not need to gather additional information to support her claim.  Lee's email stated that "[w]e are accepting liability for your claim."  Cincinnati began paying D'Hooge for certain medical bills and lost wages.  D'Hooge did not attempt to gather evidence or retain an attorney as she had planned to do if Cincinnati contested whether Tire Rama was liable.

¶5      D'Hooge and Cincinnati attempted to negotiate a settlement but reached an impasse after two and a half years.  After the parties could not settle, D'Hooge retained counsel and filed a complaint against Tire Rama in August 2023.  D'Hooge amended the complaint to add Cincinnati as a defendant with the District Court's approval.  The amended complaint alleged that Tire Rama negligently maintained its parking lot and that Cincinnati contractually obligated itself to accept liability "for [D'Hooge's] harms and losses sustained" from the slip and fall.  The amended complaint alleged that neither Tire Rama nor Cincinnati would contest liability because of Cincinnati's communications with

---

[1] An insurer must advance pay a third-party claimant's medical bills prior to final settlement when the insurer determines liability is reasonably clear and it is reasonably clear that a medical expense is causally related to the accident. *Shepard v. Farmers Ins. Exch.*, 2020 MT 320, ¶ 16, 402 Mont. 359, 477 P.3d 1114 (citing *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 16, 315 Mont. 519, 70 P.3d 721; *Ridley v. Guaranty Nat'l Ins. Co.*, 286 Mont. 325, 334, 951 P.2d 987, 991 (1997)). The insurer's obligation includes advance payment of lost wages that are "'reasonably certain and directly related to an insured's negligence or wrongful act.'" *Shepard*, ¶ 16 (quoting *DuBray v. Farmers Ins. Exch.*, 2001 MT 251, ¶ 15, 307 Mont. 134, 36 P.3d 897).

D'Hooge in December 2020. The amended complaint concluded by listing causes of actions that D'Hooge's factual allegations may support, including negligence, promissory estoppel, equitable estoppel, and spoliation.

¶6 Tire Rama filed an answer disputing that it was liable for the injuries D'Hooge sustained. Cincinnati contended in its answer that it had paid D'Hooge certain expenses that it determined were "reasonable, necessary, and causally related" to the injuries D'Hooge sustained from the slip and fall. Cincinnati stated that it reserved the right to reevaluate Tire Rama's liability and deny liability for future payments.

¶7 In October 2023, D'Hooge's counsel attempted to gather evidence relevant to Tire Rama's negligence to no avail. D'Hooge's counsel contacted the employee who was working at a nearby food truck the day of the incident, but the employee could not remember anything specific from the day of the incident. D'Hooge's counsel could not obtain security footage from a nearby business as the manager stated any footage from December 2020 was irretrievable. During discovery, D'Hooge deposed Claims Specialist Lee and Tire Rama identified a former employee who purportedly saw D'Hooge running when she fell as a potential witness.

¶8 D'Hooge moved for partial summary judgment on breach of contract and promissory estoppel in November 2023, requesting the District Court to conclude that Cincinnati agreed to pay the damages she sustained from the slip and fall by accepting liability for her insurance claim. The District Court granted D'Hooge's motion from the bench during oral argument, concluding Cincinnati was estopped from denying liability.

4

At the District Court's request, D'Hooge and Cincinnati informed the District Court as to how the case may proceed to trial. D'Hooge proposed holding a trial in which D'Hooge and Cincinnati would litigate D'Hooge's damages to determine the damages Cincinnati obligated itself it pay. Cincinnati opposed proceeding to trial because it contended that § 33-18-242(4), MCA (2023), of the Uniform Trade Practices Act (UTPA) barred D'Hooge from asserting any causes of action other than fraud or statutory bad faith against it. Cincinnati argued in the alternative that D'Hooge could not establish the elements of promissory estoppel.

¶9 Before the District Court issued a written order memorializing its ruling on D'Hooge's motion for partial summary judgment, Cincinnati moved for summary judgment on all D'Hooge's causes of action. Cincinnati asserted almost identical arguments to those it argued in opposition to D'Hooge's proposed order. In its reply brief filed on November 7, 2024, Cincinnati argued that D'Hooge could not establish the elements of breach of contract, spoliation, and equitable estoppel. D'Hooge contended that Cincinnati failed to meet its burden on summary judgment by failing to address these claims in its opening brief. Prior to issuing orders on the pending motions for summary judgment, the District Court issued an order dismissing Tire Rama based on D'Hooge's settlement with Tire Rama.

¶10 On November 8, 2024, the District Court issued an order on D'Hooge's motion for partial summary judgment that reversed course from its oral ruling and denied D'Hooge's motion. The District Court reasoned that § 33-18-242(4), MCA (2023), barred D'Hooge

as a third-party claimant from asserting causes of action other than fraud or a statutory bad faith claim against Cincinnati based on how Cincinnati handled her insurance claim. On November 13, 2024, D'Hooge moved for supplemental briefing on Cincinnati's motion for summary judgment and filed a motion to alter the District Court's order denying her motion for partial summary judgment. In each filing D'Hooge contended her causes of action were governed by the version of § 33-18-242, MCA, that was effective prior to the Legislature amending § 33-18-242, MCA, in 2023.[2] The District Court granted D'Hooge's motion for supplemental briefing on November 19, 2024.

¶11    On December 30, 2024, the District Court granted Cincinnati's motion for summary judgment and declined to reconsider its order denying D'Hooge's motion for partial summary judgment. The District Court concluded that § 33-18-242, MCA (2019), applied rather than the amended version. The District Court still concluded that Montana law barred D'Hooge from asserting breach of contract, promissory estoppel, equitable estoppel, and spoliation claims against Cincinnati because third-party claimants can only sue insurers for statutory or common law bad faith based on an insurer allegedly mishandling a claim. The District Court concluded that even if D'Hooge's claims were not barred by Montana law, that D'Hooge could not prove the elements of these claims.

---

[2] The Legislature amended § 33-18-242, MCA, in 2023 to add a subsection that states "[a] third-party claimant who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer *for fraud or pursuant to this section, but not under any other theory or cause of action*." 2023 Mont. Laws ch. 430, § 2 (emphasis added).

## STANDARDS OF REVIEW

¶12 We review the district court's order denying or granting a motion for summary judgment de novo. *Smith v. Farmers Union Mut. Ins. Co.*, 2011 MT 216, ¶ 14, 361 Mont. 516, 260 P.3d 163 (citation omitted). We apply the criteria in M. R. Civ. P. 56 to "determine whether the moving party has established both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Park Place Apartments, L.L.C. v. Farmers Union Mut. Ins. Co.*, 2010 MT 270, ¶ 11, 358 Mont. 394, 247 P.3d 236 (citation omitted). We view the facts that would be admissible in evidence "in the light most favorable to the non-moving party." *McClue v. Safeco Ins. Co. of Illinois*, 2015 MT 222, ¶ 8, 380 Mont. 204, 354 P.3d 604 (citation omitted).

## DISCUSSION

¶13 *Issue 1: Whether a third-party claimant can assert causes of action against an insurer other than statutory or common law bad faith under the version of § 33-18-242, MCA, that was effective prior to the 2023 amendments.*

¶14 The Uniform Trade Practices Act (UTPA) states "[a]n insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of [certain subsections of § 33-18-201, MCA]." Section 33-18-242(1), MCA (statutory bad faith). A third-party claimant may assert a common law bad faith claim against an insurer while an insured may only sue the insurer "for breach of the insurance contract, for fraud, or pursuant to [§ 33-18-242, MCA], but not under any other theory or cause of action." *Brewington v. Employers Fire Ins. Co.*, 1999 MT 312, ¶ 13, 297 Mont. 243, 992 P.2d 237 (quoting § 33-18-242(3), MCA). A third-party claimant

cannot sue an insurer for statutory bad faith until the third-party claimant settles the underlying action against the insured or prevails in litigation. Section 33-18-242(6)(b), MCA; *Safeco Ins. Co. of Illinois v. Mont. Eighth Jud. Dist. Ct.*, 2000 MT 153, ¶ 28, 300 Mont. 123, 2 P.3d 834.

¶15 Whether the pre-2023 version of § 33-18-242, MCA, precludes a third-party claimant from asserting causes of action other than common law or statutory bad faith against an insurer is a matter of first impression. Neither the District Court nor Cincinnati cite any cases that directly support their interpretation of § 33-18-242, MCA. Our caselaw establishes only that the plain language of § 33-18-242, MCA, does not preclude a third-party claimant from suing an insurer for common law bad faith based on the insurer allegedly mishandling an insurance claim. *Brewington*, ¶ 14.

¶16 The plain language of § 33-18-242, MCA, that applies to D'Hooge's causes of action is identical to the language we interpreted in *Brewington*. Section 33-18-242(1), MCA, allows third-party claimants and insureds to sue insurers for statutory bad faith while § 33-18-242(3), MCA, limits only the causes of action that an insured may assert against its insurer. But no similar provision limits the causes of action that a third-party may assert against an insurer if the insurer mishandles a claim. *See Brewington*, ¶ 14; § 33-18-242, MCA. The plain language of § 33-18-242, MCA, does not preclude a third-party claimant from asserting causes of action based on breach of contract, equity, or tort based on how an insurer handled an insurance claim.

¶17 Federal caselaw interpreting the pre-2023 version of § 33-18-242, MCA, proves persuasive and supports this conclusion. *See Faulconbridge v. State*, 2006 MT 198, ¶ 51, 333 Mont. 186, 142 P.3d 777 (federal caselaw constitutes persuasive authority). The federal district court in Montana has consistently interpreted § 33-18-242, MCA, to allow third-party claimants to assert various causes of action against an insurer based on how the insurer handled their claim. *Dzintars v. Fireman's Fund Ins. Co.*, No. CV-24-45-BU-BMM, 2024 WL 4347887, at *2-3 (D. Mont. Sept. 30, 2024) (intentional infliction of emotional distress and negligent infliction of emotional distress); *Lawson v. Fed. Rural Elec. Ins. Exch.*, No. CV-23-61-GF-JTJ, 2024 WL 4905159, at *2 (D. Mont. Nov. 1, 2024) (same); *see Coleman Constr., Inc. v. Diamond State Ins. Co.*, No. CV-05-148-M-JCL, 2008 WL 2357365, at *10 (D. Mont. June 5, 2008) (negligent spoliation of evidence). Cincinnati attempts to distinguish these cases by arguing that the third-party claimant settled the underlying action against the insured before filing suit against the insurer as required by § 33-18-242(6)(b), MCA. Whether or not that may have been a compelling distinction prior to D'Hooge's settlement with Tire Rama has now become a non-issue since D'Hooge settled her claims against Tire Rama.

¶18 The District Court erred by concluding that D'Hooge could not assert causes of action against Cincinnati other than statutory or common law bad faith based on how Cincinnati handled her insurance claim under the pre-2023 version of § 33-18-242, MCA.

¶19 *Issue 2: Whether the District Court erred by concluding that D'Hooge could not prove the elements of promissory estoppel, breach of contract, spoliation, and equitable estoppel as a matter of law.*

¶20	The District Court concluded that even if the UTPA did not bar D'Hooge's claims, that she could not prove the elements of promissory estoppel, breach of contract, and spoliation. D'Hooge argues the District Court erred in multiple respects because Cincinnati waived its ability to argue that she could not prove the elements of breach of contract and promissory estoppel, Cincinnati did not carry its burden of proof on summary judgment regarding breach of contract and spoliation, and its substantive analysis of these claims is flawed.

¶21	D'Hooge asserts that Cincinnati waived its ability to argue that she cannot prove the elements of promissory estoppel and breach of contract by failing to assert these arguments in its brief opposing D'Hooge's motion for partial summary judgment. Although the District Court failed to address this argument, it implicitly rejected it when it granted Cincinnati's motion for summary judgment.

¶22	A party's failure to oppose the moving party's motion for summary judgment does not relieve the district court from engaging the M. R. Civ. P. 56 analysis. *Junkermier, Clark, Campanella, Stevens, P.C. v. Alborn, Uithoven, Riekenberg, P.C.*, 2016 MT 218, ¶ 22, 384 Mont. 464, 380 P.3d 747 (citation omitted). The district court must still review the record and determine "there [is] no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Chapman v. Maxwell*, 2014 MT 35, ¶ 11, 374 Mont. 12, 322 P.3d 1029 (citing M. R. Civ. P. 56(c)(3); *Cole v. Flathead Cnty.*, 236 Mont. 412, 417, 771 P.2d 97, 100 (1989)). A district court may look beyond the parties' briefs to determine if summary judgment is appropriate. *See Junkermier*, ¶ 22 (holding that Rule

56 "required [the district court] to look beyond the parties' briefs in concluding . . . summary judgment" was appropriate).

¶23 The record indicates that Cincinnati contested whether D'Hooge could prove the elements of breach of contract or promissory estoppel in its opposition to D'Hooge's motion for summary judgment and within its own motion for summary judgment. Cincinnati argued in its brief opposing D'Hooge's proposed partial summary judgment order and in its reply brief in support of its motion for summary judgment that D'Hooge could not prove the elements of promissory estoppel and breach of contract. Cincinnati's failure to initially argue that D'Hooge could not establish the elements of each claim did not absolve the District Court of its duty to apply Rule 56 to each party's motion for summary judgment and determine whether summary judgment was appropriate. *Chapman*, ¶ 11. The District Court did not err by considering the arguments Cincinnati asserted in its subsequent briefs when applying Rule 56 to each party's respective motion for summary judgment. *Junkermier*, ¶ 22.

¶24 The District Court concluded Cincinnati was entitled to summary judgment on D'Hooge's breach of contract and spoliation claims even if the UTPA did not bar these causes of action because the undisputed evidence established that D'Hooge could not prove the elements of either cause of action. D'Hooge contends the District Court improperly granted Cincinnati's motion for summary judgment on these claims because the District Court failed to provide D'Hooge an opportunity to respond to the arguments that Cincinnati raised for the first time in its reply brief.

11

¶25 M. R. App. P. 12(3) states that the appellant's "reply brief must be confined to new matter raised in the [appellee's] brief." This appellate rule of procedure equally applies to briefs filed in the district court. *WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*, 2015 MT 312, ¶ 20, 381 Mont. 333, 360 P.3d 1112. Fairness governs whether the district court should consider an argument or evidence raised for the first time in a party's reply brief. *WLW Realty Partners LLC*, ¶ 20 (citing *Worledge v. Riverstone Residential Group, LLC*, 2015 MT 142, ¶ 17, 379 Mont. 265, 350 P.3d 39). The responding party should have a meaningful opportunity to respond to the new evidence or argument. *See Worledge*, ¶ 17 (citations omitted).

¶26 The record demonstrates that D'Hooge had a meaningful opportunity to respond to the new arguments Cincinnati raised in its reply brief. D'Hooge argued in her response brief that the facts she presented in her motion for partial summary judgment undisputably established that Cincinnati breached the purported contract. The District Court also granted D'Hooge's motion for supplemental briefing on the applicable version of § 33-18-242, MCA, but D'Hooge opted not to request an opportunity to present more evidence to create a dispute of material fact related to the breach of contract and spoliation claims. D'Hooge has not contended that she could have presented more evidence to create a dispute of material fact if given a further opportunity to respond. *See Worledge*, ¶¶ 18-20 (affirming the district court's denial of motion to strike evidence for class certification because the district court gave the parties an opportunity to respond and the parties failed to demonstrate what additional evidence would have affected the district court's ruling). The

12

District Court did not err by considering the arguments that Cincinnati asserted in its reply brief regarding breach of contract and spoliation.

¶27 A contract must include all its essential elements to be enforceable. *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, ¶ 17, 364 Mont. 425, 276 P.3d 854 (citation omitted). The essential elements of a contract are (1) identifiable parties capable of contracting; (2) mutual assent between the contracting parties regarding the essential terms; (3) a lawful object; and (4) consideration. *Jarussi v. Sandra L. Farber Trust*, 2019 MT 181, ¶ 17, 396 Mont. 488, 445 P.3d 1226 (citation omitted).

¶28 Cincinnati contends the District Court correctly concluded Lee's email to D'Hooge stating that "[w]e are accepting liability for your claim" could not form an enforceable contract because the email did not contain essential terms, such as that Cincinnati accepted liability for all D'Hooge's damages and that the parties would litigate the amount of damages owed. D'Hooge contends the essential terms are that Cincinnati agreed to pay the damages she sustained from the slip and fall in exchange for her not collecting any evidence.

¶29 "Essential terms [of a contract] encompass 'critical issues' as opposed to 'mere details.'" *Hurly*, ¶ 17 (quoting *Zier v. Lewis*, 2009 MT 266, ¶ 23, 352 Mont. 76, 218 P.3d 465). "Subsidiary matters, collateral matters, or matters that go to the performance of the contract, do not constitute material terms." *Olsen v. Johnston*, 2013 MT 25, ¶ 21, 368 Mont. 347, 301 P.3d 791 (collecting cases).

¶30 D'Hooge relies on *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190 (Ind. Ct. App. 1980) to support her contention that a third-party claimant can sue an insurer for breach of contract. But the purported contract D'Hooge seeks to enforce lacks any terms similar to the document at issue in *Heck*. In *Heck*, the third-party claimant's attorney memorialized an oral agreement by sending an email to the insurer's claims adjuster. *Heck*, 873 N.E.2d at 192-93. The attorney's email clearly stated the terms the attorney and the claims adjuster agreed upon, such as that the insurer admitted liability on behalf of the insured, stated the specific claims that the insurer accepted liability for, stated that the only remaining issue was the amount of damages, and designated the type of damages the third-party claimant could recover. *Heck*, 873 N.E.2d at 192-93.

¶31 The email that D'Hooge contends created an enforceable contract is readily distinguishable from the email in *Heck*. Although the email D'Hooge received states that "[Cincinnati] [is] accepting liability for your claim," it was in response to D'Hooge's assertion that Montana law required Cincinnati to advance pay her medical bills and lost wages, which Cincinnati did after sending the email advising D'Hooge that it was accepting liability for the claim. It is not clear whether Cincinnati was accepting liability beyond that obligation, what other damages Cincinnati might pay, or how those damages may be determined. The email could not create an enforceable contract as Cincinnati and D'Hooge could not have mutually assented to a contract that lacks essential terms.

14

¶32 The District Court correctly denied D'Hooge's motion for partial summary judgment and granted Cincinnati's motion for summary judgment because the undisputed material facts establish that D'Hooge could not prove that an enforceable contract existed.

¶33 "[A] party asserting promissory estoppel must prove four elements: [1] a clear and unambiguous promise, [2] reliance by the promisee, [3] reasonableness and foreseeability of the reliance, and [4] resulting injury to the promisee." *S&P Brake Supply, Inc. v. STEMCO LP*, 2016 MT 324, ¶ 44, 385 Mont. 488, 385 P.3d 567 (citation omitted).

¶34 The District Court concluded that the undisputed material facts established that Cincinnati's email did not constitute an unambiguous promise. The District Court also concluded that D'Hooge could not establish she detrimentally relied on Cincinnati's statement because there was no evidence for D'Hooge to gather that would have supported a cause of action against Tire Rama.

¶35 Cincinnati argues the District Court correctly concluded that the undisputed material facts prove Cincinnati did not clearly promise to accept liability for D'Hooge's entire claim and that D'Hooge did not sustain an injury. D'Hooge contends the undisputed material facts establish she can prove all the elements of promissory estoppel. Specifically, D'Hooge contends that Cincinnati unambiguously promised to pay D'Hooge's general and special damages based on Claims Specialist Lee's deposition testimony. Alternatively, D'Hooge contends that a dispute of material fact exists because a reasonable jury could find that Cincinnati unambiguously promised to pay D'Hooge's general and special damages.

15

¶36 D'Hooge's argument that Cincinnati clearly promised to pay all the damages she sustained from her slip and fall faces similar issues as the breach of contract claim. The email Cincinnati sent to D'Hooge stated "[w]e are accepting liability for your claim." The email does not elaborate on what "claim" that Cincinnati accepted liability for and never discusses what damages that Cincinnati promised to pay. It could mean that Cincinnati agreed to pay all the damages D'Hooge sustained from the slip and fall as D'Hooge contends or it could mean that Cincinnati determined Tire Rama's liability was reasonably clear and accepted liability for the damages it was required to pay pursuant to *Ridley* and *DuBray*.

¶37 Summary judgment on promissory estoppel is inappropriate if the terms of the promise can be ascertained through further fact finding. *See Tope v. Taylor*, 224 Mont. 131, 136-37, 728 P.2d 789, 793-94 (1986) (reversing summary judgment because defendant's promise to distribute the estate as desired by decedent was ascertainable if the plaintiff could prove the will was not changed or destroyed). D'Hooge contends that Lee's deposition testimony establishes that Cincinnati intended to agree to pay D'Hooge's general and special damages. Lee testified that D'Hooge could understand the email to mean that Cincinnati accepted liability for her general and special damages in response to questioning that asked Lee to explain how D'Hooge might perceive the email. The testimony regarding D'Hooge's understanding does not clarify the extent of liability that Cincinnati intended to accept as D'Hooge's perception of the email is immaterial to

16

establish Cincinnati's intent. The District Court did not err by concluding that D'Hooge could not prove the email constitutes a clear and unambiguous promise.

¶38 Cincinnati's email may have misled D'Hooge, but it does not provide sufficient clarity to prove promissory estoppel. D'Hooge may still seek a remedy for Cincinnati's actions through other causes of action, such as spoliation and equitable estoppel. We do not address whether D'Hooge suffered an injury as she must prove all elements to establish promissory estoppel. The District Court did not err by granting Cincinnati's motion for summary judgment on promissory estoppel and denying D'Hooge's motion for partial summary judgment.

¶39 A party asserting a negligent spoliation of evidence claim must prove (1) a potential civil action exists, (2) the defendant had a legal or contractual duty to preserve evidence relevant to the civil action, (3) destruction of the evidence, (4) destruction of the evidence significantly impaired the plaintiff's ability to prove the civil action, (5) causal connection between the destruction of the evidence and the plaintiff's inability to prove the civil action, (6) the plaintiff had a significant possibility of succeeding if the evidence were available, and (7) damages. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 41, 297 Mont. 336, 993 P.2d 11 (citations omitted).

¶40 The District Court concluded that Cincinnati did not have a legal or contractual duty to preserve evidence and questioned whether evidence existed that could have been destroyed at the time Cincinnati instructed D'Hooge to stop collecting evidence. D'Hooge

17

and Cincinnati dispute whether the District Court correctly concluded that Cincinnati did not have a duty to preserve evidence and that evidence had not been destroyed.

¶41 D'Hooge argues that *Coleman Constr., Inc. v. Diamond State Ins. Co.*, No. CV-05-148-M-JCL, 2008 WL 2357365 (D. Mont. June 5, 2008), establishes that an insurer has a duty to preserve evidence when necessary to avoid hampering a third-party claimant's cause of action against its insured. D'Hooge contends Cincinnati's duty to preserve evidence arose in this case because Cincinnati instructed D'Hooge to stop gathering evidence to prove Tire Rama's liability. Cincinnati contends that it complied with its sole duty to investigate D'Hooge's insurance claim and decide whether Tire Rama's liability was reasonably clear.

¶42 "Foreseeability depends upon whether the injured party was within the scope of risk created by the alleged negligence; whether the defendant could have foreseen that the conduct could have resulted in injury to the plaintiff." *Lokey v. Breuner*, 2010 MT 216, ¶ 12, 358 Mont. 8, 243 P.3d 384 (citation omitted). We inquire as to what a reasonably prudent person would "have foreseen as likely to happen." *Jackson v. State*, 1998 MT 46, ¶ 54, 287 Mont. 473, 956 P.2d 35 (citation omitted).

¶43 D'Hooge's inability to prove Tire Rama's negligence was within the scope of risk created by Cincinnati's conduct and Cincinnati reasonably could have foreseen that its conduct would injure a third-party claimant, such as D'Hooge. Liability insurers are familiar with handling third-party claims, are regularly involved with litigation, and obviously appreciate the importance of promptly gathering evidence to successfully pursue

18

or defend against a claim. *See Coleman*, 2008 WL 2357365 at *6 (citing *Thompson v. Owensby*, 704 N.E.2d 134, 137 (Ind. Ct. App. 1998)).

¶44 As Tire Rama's insurer there is no dispute that Cincinnati knew that Tire Rama was still exposed to liability when it instructed D'Hooge to stop gathering evidence as Cincinnati purportedly only accepted liability for D'Hooge's damages that it had determined Tire Rama's liability was reasonably clear. A reasonably prudent person could foresee that Cincinnati instructing D'Hooge to stop gathering evidence would induce such action and hamper her ability to prove Tire Rama's negligence and recover all the damage she sustained from her slip and fall.

¶45 Insurers that accept liability for certain medical bills and lost wages based on their duties under *Ridley* and *DuBray* do not obligate themselves to make the third-party claimant whole as the insurer can reevaluate liability and cease making payments. *See Depositors Ins. Co. v. Sandidge*, 2022 MT 33, ¶¶ 20-21, 407 Mont. 385, 504 P.3d 477. But allowing insurers to accept a claim without an express reservation while simultaneously instructing a third-party claimant to stop collecting evidence without imposing a duty on the insurer to preserve evidence can hamstring a third-party claimant's ability to prove the insured's negligence and recover for the damages sustained. The District Court holding as a matter of law that Cincinnati did not have a legal or contractual duty to preserve evidence was incorrect.

¶46 A plaintiff must prove the destruction of evidence to succeed on a spoliation claim. *Oliver*, ¶ 41. Cincinnati contends no evidence was destroyed because there was no

19

evidence for D'Hooge to gather as of December 28, 2020, when Cincinnati told D'Hooge to stop gathering evidence as it had been three weeks since the accident occurred. Cincinnati speculates that no one witnessed D'Hooge fall and no nearby businesses or streetlights had cameras that recorded the incident. Cincinnati's argument illustrates the issue: D'Hooge did not timely contact potential witnesses or pursue other sources of information because Cincinnati told her to stop gathering evidence. By the time D'Hooge's attorney began to gather evidence in October 2023, the employee who was working at the nearby food truck could not recall any specifics about the day of the incident and any security footage captured by a nearby business had become irretrievable. D'Hooge also lost the opportunity to interview other potential witnesses or obtain other footage to prove she was walking rather than running before she fell, which would be relevant to rebutting Tire Rama's witness who would testify to seeing D'Hooge running across the parking lot when she slipped and fell. While the record does not definitively establish that evidence was destroyed, it creates a factual dispute that precluded summary judgment on D'Hooge's spoliation claim.

¶47 The District Court granted summary judgment on D'Hooge's equitable estoppel claim on the grounds that it was barred by the UTPA. The District Court neglected to alternatively analyze whether the undisputed material facts established that D'Hooge could not prove the elements of equitable estoppel if the UTPA did not bar the cause of action. Cincinnati argues that the District Court correctly "determined that [D'Hooge's] equitable estoppel claim also failed as a matter of law even if it was not barred by the UTPA and

20

common law bad faith." Cincinnati fails to offer any substantive argument beyond relying on the District Court's non-existent analysis. Cincinnati asserts that "none of the facts support" D'Hooge's equitable estoppel cause of action without explaining what facts it relies on or how they establish the absence of a dispute of material fact. We do not develop legal analysis to support a party's position. *HSBC Bank USA, Nat'l Ass'n v. Anderson*, 2017 MT 257, ¶ 41 n.4, 389 Mont. 106, 406 P.3d 416 (citation omitted). We decline to address Cincinnati's argument on appeal. The District Court erred by granting summary judgment on equitable estoppel.

¶48     *Issue 4: Whether the District Court erred by concluding that D'Hooge failed to raise claims for unjust enrichment, negligent and intentional interference with economic advantage, and constructive fraud.*

¶49     Cincinnati argues the District Court correctly granted summary judgment on D'Hooge's theories of recovery that she asserted in her brief opposing Cincinnati's motion for summary judgment (i.e., unjust enrichment, negligent and intentional interference with economic advantage, and constructive fraud) because D'Hooge did not plead them in the complaint or amended complaint. D'Hooge contends the District Court improperly granted summary judgment on these claims because she sufficiently pled the causes of action in the amended complaint.

¶50     "[A] complaint must put a defendant on notice of the facts the plaintiff intends to prove; the facts must disclose the elements necessary to make the claim; and the complaint must demand judgment for the relief the plaintiff seeks." *Kunst v. Pass*, 1998 MT 71, ¶ 35, 288 Mont. 264, 957 P.2d 1 (citing *Mysse v. Martens*, 279 Mont. 253, 266, 926 P.2d 765,

21

773 (1996)). "[A] complaint must state something more than facts" that would breed only a suspicion that the plaintiff is entitled to relief. *Mysse*, 279 Mont. at 266, 926 P.2d at 773 (citation omitted).

¶51 The amended complaint asserts factual allegations that indicate D'Hooge would attempt to prove that Tire Rama negligently maintained its parking lot, Cincinnati admitted liability on behalf of itself and Tire Rama, and Cincinnati deterred D'Hooge from gathering evidence to prove Tire Rama's negligence. The amended complaint enumerated the causes of action that the factual allegations may support, but the extensive list did not include unjust enrichment, negligent and intentional interference with economic advantage, or constructive fraud. The amended complaint does not sufficiently plead causes of action based on unjust enrichment, intentional and negligent interference of economic advantage, and constructive fraud because the factual allegations do not indicate, reference, or imply how the alleged facts would support these causes of action. The District Court did not err by granting Cincinnati's motion for summary judgment regarding these causes of action.

## CONCLUSION

¶52 The District Court erred by concluding that the pre-2023 version of § 33-18-242, MCA, precluded D'Hooge from asserting any causes of action other than statutory or common law bad faith. The District Court did not err by denying D'Hooge's motion for partial summary judgment and granting Cincinnati's motion for summary judgment on promissory estoppel, breach of contract, and the insufficiently pled causes of action. The District Court erred by granting summary judgment on spoliation and equitable estoppel.

22

We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ KATHERINE M. BIDEGARAY